ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| EZEQUIEL ARCE CRUZ<br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br>Recurrido | KLRA202500289 | *Revisión Administrativa* procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm.:<br>ICSH-02-25<br><br>Sobre:<br>Registro |
| --- | --- | --- |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Martínez Cordero y el Juez Cruz Hiraldo

Rivera Marchand, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de junio de 2025.

Comparece ante esta Curia, el señor Ezequiel Arce Cruz (Sr. Arce Cruz o recurrente) y solicita que dejemos sin efecto los dictámenes que emitió la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación (DCR), relacionados a sus solicitudes de remedios administrativos ICSH-02-25 y ICSH-11-25. Insta, además, a que ordenemos al DCR devolverle todas las pertenencias que, a su entender, fueron confiscadas ilegalmente.

Por los fundamentos que expondremos a continuación, confirmamos la determinación recurrida.

**I.**

Surge del expediente ante nuestra consideración que, el 22 de enero de 2025, el Sr. Arce Cruz instó una primera *Solicitud de Remedio Administrativo* (ICSH-02-25). En ella, expuso que fue objeto de un registro "fuera de lo normal", a manos del Sargento Méndez y del Teniente Montero, quienes presuntamente alteraron su paz y su

estado emocional, al asumir una actitud desafiante, al utilizar lenguaje despectivo y al expresar que tenía un tanque de pep[p]er [spray] que quería rociar. Agregó que, al regresar a su área de vivienda se percató del "sabotaje que me hicieron con mis pertenencias injustamente, dañando mi ropa, y otras pertenencias más y llev[á]ndose cosas personales que no alteraron la seguridad ni le hacen daño a nadie."[1]

Poco después, el 29 de enero de 2025, el Sr. Arce Cruz presentó otra *Solicitud de Remedio Administrativo* (ICSH-11-25). Allí alegó que, el Sargento Méndez, el Teniente Montero y otros oficiales realizaron un nuevo registro, sin motivo. Lo describió como un registro no rutinario, un acto de vandalismo en contra de sus pertenencias, tal cual lo hicieron el 12 de diciembre de 2024 y el 22 de enero de 2025. Según el Sr. Arce Cruz, ocuparon ropa y pertenencias legales, le dañaron y ensuciaron ropa (nueva o vieja). Suplicó al DCR tomar acción dirigida a detener tales abusos.

En atención a la primera solicitud de remedio, el DCR notificó su *Respuesta al Miembro de la Población Correccional* (ICSH-02-25), el 7 de febrero de 2025. En ella expresó haber orientado al personal con el fin de que no realicen comentarios intimidantes a ningún miembro de la población correccional o a empleados.

Inconforme con el referido dictamen, el 20 de febrero de 2025, el Sr. Arce Cruz presentó un petitorio de reconsideración. Insistió en que sus pertenencias nuevas fueron ocupadas ilegalmente, las cuales describió como: "1 una suera gris, 2 dos camisas gris oscuro manga larga, 2 dos camisillas gris oscuro y 2 blancas, 6 seis boxer licra, 2 dos pantalones cortos azul oscuro, 1 un refill [fushon] de 5 cartuchos nuevos, y 1 un body splash perfume."[2]

Para sustentar su argumento, el Sr. Arce Cruz hizo referencia a las disposiciones sobre inventario y recibo de propiedad que emanan del *Reglamento Interno de Normas y Limitaciones sobre*

---

[1] Anejo 1.
[2] Anejo 5.

*Propiedad Personal de Confinados,* y a las acciones disciplinarias que deben tomar los supervisores, a tenor del Reglamento Núm. 7436, *Reglamento para la Administración de los Recursos Humanos del Departamento de Corrección y Rehabilitación y de la Administración de Corrección,* de 7 de diciembre de 2007.

Pendiente ante la agencia el petitorio de reconsideración, y en respuesta a la segunda solicitud de remedio (ICSH-11-25), el 27 de febrero de 2025, el DCR notificó su dictamen mediante el cual hizo constar "[e]l proceso de registro debe ser uno orden[ado] y respetando las pertenencias de cada uno de los mie[m]bros de la población correccional, se le brindaron instrucciones a toda la oficialidad, que las pertenencias fueran reubicadas lo m[á]s posible en el lugar que estaban, esperamos que esta situaci[ó]n no contin[ú]e sucediendo."[3]

Posteriormente, y tras acoger el petitorio de reconsideración, el DCR notificó su *Resolución,* el 2 de mayo de 2025, en la cual concluyó que:

> [s]e orienta al recurrente que todo art[í]culo confiscado en un registro no se le devuelve a los miembros de la población correccional ya que no cumplen con el protocolo de seguridad y/o no están autorizados para ser parte de las pertenencias.
>
> Recuerde que una vez se realiza un registro siempre están presentes supervisores de seguridad y cualquier reclamación debe ser dirigidas a ellos. Pero también en las rondas de supervisión puede exponer su inquietud al comandante de la guardia y/o superintendente.

Sobre tales bases, el DCR confirmó y amplió la *Respuesta al Miembro de la Población Correccional* (ICSH-02-25).[4] Aún en desacuerdo, el recurrente insta ante nos el presente recurso de revisión judicial a través del cual imputa al DCR los siguientes errores:

> Las pertenencias ilegalmente confiscadas no son de índole de contrabando ni ilegalmente obtenidas, todas y cada una de las pertenencias fueron legítimamente obtenidas por medio de los memorando[s] de

---

[3] Anejo 4.

[4] Cabe señalar que, la *Respuesta al Miembro de la Población Correccional* (ICSH-11-25) no fue objeto de reconsideración ante el DCR.

autorización de paquetes por visita de familiares de la parte recurrente.

El debido proceso de ley enmarca una serie de requisitos en cuanto a la obtención y confiscación de bienes pertenecientes a el pueblo por parte de los oficiales, y atentar contra dicho proceso es uno arbitrario y caprichoso por parte del Departamento [d]e Corrección y Rehabilitación.

La respuesta emitida no fue una razonable ante dicha situación, en la cual trata de establecer como si los artículos de higiene personal o vestimenta (ilegalmente ocupados) atentara contra la seguridad institucional.

Dichos funcionarios están actuando so color de autoridad contra la parte recurrente causando un daño irreparable a su bienestar dentro de la institución correccional.

En cumplimiento con nuestro requerimiento, la Oficina del Procurador General de Puerto Rico compareció, en representación del DCR, mediante un *Escrito en Cumplimiento de Resolución y Solicitud de Desestimación.* Arguye que, procede la desestimación del recurso ante la falta del recurrente de realizar el pago del arancel correspondiente y por este recurrir mediante un mismo recurso de dos determinaciones administrativas independientes, sin que estas hayan sido consolidadas.

Con el beneficio de las posturas de ambas partes, autorizamos al Sr. Arce Cruz a litigar como indigente y de forma *pauperis,* producto de lo cual, lo eximimos de cancelar los aranceles correspondientes y acogemos los cuestionamientos del recurrente como asuntos relacionados. Superado el asunto de índole jurisdiccional, procedemos a resolver.

**II.**

**A. La Revisión Judicial y la Doctrina de la Deferencia Judicial**

La Sección 4.1 de la Ley Núm. 38-2017, Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), 3 LPRA sec. 9671, dispone que las decisiones administrativas pueden ser revisadas por el Tribunal de Apelaciones. Ahora bien, en el ejercicio de tal facultad, el foro apelativo está obligado a ser deferente a las determinaciones de los organismos administrativos en consideración a la experiencia y al conocimiento especializado

que estas poseen sobre los asuntos que le fueron delegados. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan,* 2025 TSPR 33, resuelto el 27 de marzo de 2025. Al mismo tiempo, esta facultad revisora delimita la discreción de los organismos administrativos a modo de asegurar que estos ejerzan sus funciones dentro de los márgenes de las facultades que le fueron delegadas por ley. *Jusino Rodríguez v. Junta de Retiro del Gobierno de Puerto Rico,* 2024 TSPR 138, resuelto el 26 de diciembre de 2024. Por último, permite a los foros judiciales velar que los entes administrativos den cumplimiento a los mandatos constitucionales, en especial, al debido proceso de ley. *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* 213 DPR 743 (2024).

Como se sabe, las agencias administrativas son en muchas ocasiones los primeros intérpretes de las leyes que rigen el ejercicio de su ministerio. *Buxó Santiago v. Oficina de Ética Gubernamental,* 2024 TSPR 130, resuelto el 10 de diciembre de 2024. Ahora bien, son los tribunales los que gozan de facultad para interpretar las leyes y la Constitución. *Íd.* Por consiguiente, ante una interpretación de la agencia que produzca resultados incompatibles o contrarios a su política pública o a su propósito interpretado, la deferencia cede ante la interpretación administrativa. *Íd.*

Por lo tanto, al revisar una actuación de una agencia administrativa el criterio rector es la razonabilidad. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan,* supra. De manera que, procede la revisión judicial cuando el organismo administrativo haya actuado de forma arbitraria, ilegal, irrazonable o que haya abusado de su discreción. *Íd.* A tono con lo anterior, la Sección 4.5 de la LPAU, 3 LPRA sec. 9675, y la jurisprudencia interpretativa limitan la revisión judicial a tres (3) aspectos: (1) si es apropiado el remedio concedido; (2) si las determinaciones de hechos están basadas en evidencia sustancial; (3) si las conclusiones de derecho fueron correctas. *Íd.* De conformidad, a tenor de la Sección 3.14 de la LPAU, 3 LPRA sec. 9654, el dictamen final del ente administrativo sujeto a

revisión judicial ha de contener la advertencia sobre el derecho a solicitar reconsideración o revisión judicial, adicional a las determinaciones de hechos y a las conclusiones de derecho. *Íd.*

Como vemos, al ejercer su facultad revisora, los tribunales no pueden descartar de forma absoluta el dictamen administrativo sin antes haber examinado la totalidad del expediente y haber determinado que la agencia actuó irrazonablemente al ejercer su discreción administrativa. *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra. Al mismo tiempo, el Tribunal Supremo ha resuelto con igual firmeza que, los tribunales no podemos imprimirle un sello de corrección, so pretexto de deferencia, a las determinaciones o interpretaciones administrativas irrazonables, ilegales, o simplemente contrarias a derecho. *Íd*; *Super Asphalt v. AFI y otro,* 206 DPR 803 (2021).

Por otro lado, la citada Sección 4.5 de la LPAU, *supra,* dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". *Otero Rivera v. Bella Retail Group, Inc. y otros,* 2024 TSPR 70, resuelto el 24 de junio de 2024. Aun así, se sustituirá el criterio de la agencia cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo. *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 36 (2018). Por ende, "los tribunales deben darle peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra". *Íd.* Lo anterior responde a la vasta experiencia y al conocimiento especializado o *expertise* que tienen las agencias sobre los asuntos que le son encomendados. *Capó Cruz v. Jta Planificación et al.,* 204 DPR 581 (2020). Ahora bien, cuando el razonamiento de la agencia sea incompatible o contrario al propósito y a la política pública del estatuto interpretado, los tribunales tienen libertad absoluta de descartar las conclusiones de dicho organismo administrativo, en aras de obtener un resultado sensato, lógico y razonable. *Otero Rivera v. Bella Retail Group, Inc. y otros,* supra.

De otra parte, dada la presunción de corrección y regularidad que reviste a las determinaciones de hecho elaboradas por las agencias administrativas, éstas deben ser respetadas mientras la parte que las impugna no produzca evidencia suficiente para derrotarlas. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan,* supra. Por lo tanto, si al examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *Hernández Feliciano v. Mun. Quebradillas,* 211 DPR 99 (2023).

**III.**

En su recurso, el Sr. Arce Cruz señala la comisión de cuatro errores todos dirigidos a que ordenemos al DCR devolverle sus pertenencias las cuales, a su entender, fueron ilegalmente confiscadas. A lo antes, el DCR se opuso y solicitó la desestimación del recurso.

Tal cual expusimos en el tracto procesal, en respuesta a la *Solicitud de Remedio Administrativo* (ICSH-02-25), el DCR atendió el reclamo del recurrente y orientó al personal de la agencia a que se abstenga de verbalizar en contra de los confinados y los empleados comentarios intimidantes. En vista de que el DCR tomó acción en cuanto a lo intimado por el recurrente, y ante los hechos posteriores expuestos en la segunda solicitud, dictaminamos que este asunto se ha tornado académico.

Con respecto a la segunda solicitud de remedio, colegimos del expediente y del Artículo VIII del *Reglamento Interno de Normas y Limitaciones sobre Propiedad Personal de Confinados* que, el DCR establece unos límites en cuanto a los artículos permitidos y las cantidades específicas para cada uno. Además, faculta al DCR a

incautar los artículos excedentes y a disponer de ellos. En lo pertinente dispone:

> [l]a propiedad personal de los confinados se limitará a los artículos y cantidades detalladas más adelante. El límite establecido aparece en el margen derecho. En aquellos casos donde no se especifica cantidad, los mismos podrán acumularse en la medida en que no creen un problema sanitario, de seguridad o de riesgo de incendio. Todos los artículos encontrados en poder de confinados, en las áreas de vivienda o en áreas comunes que no están enumerados o excedan los límites establecidos, serán incautados y se dispondrá de ellos, según se establece en este Reglamento.
>
> A. Nuevo Ingreso
> […]
>
> B. Confinado Sentenciado
>     1. Al ingresar se le hará entrega de:
>       <u>ARTÍCULO</u>
>       a.  1 jabón de 3.05 onzas
>       b.  1 cepillo dental
>       c.  1 pasta dental de 3.05 onzas
>       d.  1 juego de sábanas
>       e.  1 "mattress" higienizado
>       f.  1 almohada
>       g.  1 papel sanitario a varones y tres rollos a las féminas
>       h.  1 cuchara
>       i.  1 funda
>       j.  1 bandeja
>       k.  1 vaso
>       l.  1 par de calzado
>       m. 2 uniformes
>       n.  pantalón corto
>       o.  7 pantaloncillos
>       p.  7 pares de medias
>       q.  […]
>
> A los fines de establecer un control para el manejo y distribución de los artículos de Ropería se completará una hoja o formulario "Recibo de Propiedad Entregada al Confinado Sumariado en la Institución" (Véase Anejo). El original de este formulario permanecerá en el [Á]rea de Admisiones y se enviará copia al Oficial de Ropería.

Colegimos del detalle de artículos que desglosó el recurrente, tanto en su petitorio de reconsideración, como en su recurso ante nos, que reclama la devolución de ciertos artículos personales que no están autorizados por la citada reglamentación. En particular, este Reglamento no viabiliza que un miembro de la población correccional tenga posesión de abrigos, camisas de manga larga, camisillas, cartuchos de afeitarse y perfume. Con respecto a los dos (2) pantalones cortos azul oscuro y a los seis (6) boxer licra, cuya posesión está permitida, aunque limitada a solo un (1) pantalón

corto y a siete (7) pantaloncillos, el recurrente no nos puso en posición de dictaminar que el DCR erró en su proceder. Ello, en la medida en que no presentó un "Recibo de Propiedad Entregada al Confinado Sumariado en la Institución" del cual podamos constatar si actualmente está en posesión de otro pantalón corto o de otros pantaloncillos, a modo de poder evaluar su petitorio a la luz de la actuación de la agencia.

Sobre tales bases dictaminamos que, el DCR actuó dentro de los márgenes de sus facultades. Entiéndase que, el DCR podía incautar los referidos artículos y disponer de ellos. Cónsono con ello, concluimos que el DCR no incurrió en los errores que se le imputan.

**IV.**

En virtud de las razones expuestas, confirmamos la *Respuesta al Miembro de la Población Correccional* (ICSH-11-25) y decretamos no ha lugar a la solicitud de desestimación del DCR.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones